## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SAMUEL APPLEWHITE, #R01468, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.   17-cv-1111-JPG-SCW |
| | ) | |
| BOBBY BLUM and | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### INTRODUCTION

*Pro se* Plaintiff Samuel Applewhite brought this cause of action on October 17, 2017, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 while he was an inmate at Pinckneyville Correctional Center ("Pinckneyville").   At threshold review, pursuant to 28 U.S.C. § 1915A, the Court found that Plaintiff was allowed to proceed with his claims against Defendants Bobby Blum and Wexford Health Sources, Inc. ("Wexford"), whom Plaintiff alleges violated his Eighth Amendment rights by refusing to renew, and later delaying, Plaintiff's pain medication, and refusing to provide an ultrasound test to evaluate and diagnose the cause of Plaintiff's testicular pain, respectively.   (Doc. 9, pp. 3–4).

On March 30, 2018, Defendants Blum and Wexford filed their Motion for Summary Judgment on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing suit.   (Docs. 31, 32).   Defendants' stated grounds for seeking

summary judgment are that the only grievance that Plaintiff filed relating to his Eighth Amendment claims was not appealed to the ARB. (Doc. 32, p. 6). Plaintiff filed his Response on April 9, 2018. (Doc. 34). In his response, Plaintiff concedes that he did not appeal his grievance to the ARB, but argues that his administrative remedies were effectively exhausted after Pinckneyville's Chief Administrative Officer ("CAO") determined that Plaintiff's grievance, which was submitted as an emergency grievance, did not constitute an emergency. (Doc. 34, p. 1). Because the undersigned concluded that the parties' filings do not implicate a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, **544 F.3d 739 (7th Cir. 2008)** was necessary, and Defendants' motion is now ripe for disposition. For the reasons stated below, the undersigned **RECOMMENDS** the Court **GRANT** Defendants Blum and Wexford's Motion for Summary Judgment.

## FACTS

Plaintiff filed his Complaint on October 17, 2017. (Doc. 1). Pursuant to the Court's threshold order, Plaintiff's Complaint contained two counts that survived review pursuant to 28 U.S.C. § 1915A. First, Plaintiff alleges that Defendant Blum was deliberately indifferent to his serious medical needs by failing to renew Plaintiff's pain medication in August 2017, and later delaying Plaintiff's receiving pain medication in October 2017. (Doc. 9, pp. 4–5). Second, Plaintiff alleges that Wexford was deliberately indifferent to his serious medical needs by refusing to provide an ultrasound test to evaluate and diagnose the cause of Plaintiff's testicular pain—Plaintiff

specifically alleges that Wexford's refusal was the direct result of an official policy espoused by Wexford.   (*Id*.).

In his Complaint, Plaintiff alleges that he has suffered from testicular cysts since at least 2015, and that these cysts cause him pain.   (*Id*. at p. 2).   Plaintiff also alleges that he had been prescribed pain medication in the past.   (*Id*.).   Plaintiff alleges that on August 30, 2017, Defendant Blum, a nurse practitioner, examined Plaintiff and confirmed that he had two cysts on each of his testicles.   Plaintiff requested that Defendant Blum renew his pain medication prescription, but Defendant Blum refused to do so because Blum "knew" Plaintiff was "not in pain."   (*Id*.).   However, at this time Defendant Blum told Plaintiff that he would seek approval for Plaintiff to have an ultrasound test to evaluate Plaintiff's cysts.   (*Id*. at pp. 2–3).

On September 21, 2017, Wexford refused to approve the referral for an ultrasound test.   (*Id*. at p. 3).   Plaintiff saw Defendant Blum again on October 5, 2017, telling Defendant Blum that his testicular pain was so bad he could barely walk.   (*Id*.).   Defendant Blum prescribed Plaintiff with ibuprofen, but Plaintiff did not receive the medication until the next day, and Defendant Blum did not order any refills of the ibuprofen.   (*Id*.).

Plaintiff filed an emergency grievance relating to his testicular cysts and pain on September 2, 2017.   (Doc. 34, p. 4).   Plaintiff's grievance was directed towards Pinckneyville's CAO, who received Plaintiff's grievance on September 8, 2017, and agreed that Plaintiff's grievance was to undergo expedited review as an emergency.

(*Id*.).   Plaintiff's emergency grievance was reviewed and substantively responded to by a grievance officer on September 27, 2017—this officer, a nonparty to Plaintiff's suit, recommended that Plaintiff's grievance be denied.   (*Id*. at p. 3).   The CAO concurred with the officer's recommendation on September 29, 2017, at which time Plaintiff's grievance was returned as denied.   (*Id*. at pp. 1, 3).

Plaintiff did not appeal the CAO's substantive response to the Administrative Review Board ("ARB").   (Doc. 1, p. 4; Doc. 34, p. 1).   Instead, Plaintiff filed his Complaint on October 17, 2017.   (Doc. 1).   Plaintiff argues that his administrative remedies were exhausted on September 29, 2017, the date that he received the CAO's substantive response denying his emergency grievance, and that he is neither required to appeal the CAO's denial of the grievance to the ARB, nor resubmit his grievance through normal channels in order to exhaust his administrative remedies.   (Doc. 34, p. 1).

## LEGAL STANDARDS

### 1.  Summary Judgment Standard

Summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.   ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed.R.Civ.P. 56(a))**.   The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**.  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterp. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court normally views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012)**; *Righi v. SMC Corp.* , **632 F.3d 404, 408 (7th Cir. 2011)**; *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**.  As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor."  *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

A Motion for Summary Judgment based upon failure to exhaust administrative remedies, however, typically requires a hearing to determine any contested issues regarding exhaustion, and a judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).**  The case may proceed on the merits only after any contested issue of exhaustion is resolved.  *Pavey*, **544 F.3d at 742.**  While generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether a general issue of triable fact exists, a different standard applies to

summary judgment on the issue of exhaustion. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**. In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41**. However, in this instance, the undersigned found no debatable factual issues, and no evidentiary hearing was held.

### 2. PLRA's Exhaustion Requirement

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the Illinois Department of Corrections. *See Jones v. Bock*, **549 U.S. 199, 218 (2007)**.

The PLRA provides that "no action shall be brought [under federal law] with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a)**. Under the PLRA, exhaustion of administrative remedies is mandatory, and unexhausted claims cannot be brought in court. *Jones*, **549 U.S. at 211**. The case may proceed on the merits only after any contested issue of exhaustion is resolved by the court. *Pavey*, **544 F.3d at 742**.

The Seventh Circuit takes a strict compliance approach to exhaustion; requiring inmates follow all grievance rules established by the correctional authority. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006)**. A prisoner must therefore "file complaints and appeals in the place, and at the time, the prison's rules require." *Pozo v.*

*McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002)**.   But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him.  **42 U.S.C. § 1997e(a)**.   If the prisoner fails to follow the proper procedure, however, the grievance will not be considered exhausted.  *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011)**.   The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation.  *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006)**.

Additionally, exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted.  *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004)**.   Rather, a prisoner must wait to bring a suit until after he completes the exhaustion process.  *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a))**.   A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's administrative remedies become exhausted during the pendency of the suit.  *Id.*

However, "[g]rievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit."  *Glick v. Walker*, **385 Fed. App'x 579, 582 (7th Cir. 2010)**.   A prisoner's failure to "specifically name defendants" in his or her grievance is not fatal to exhaustion so long as the "grievance serve[s] its function by providing prison officials a fair opportunity to address his [or her] complaint."  *Maddox v. Love*, **655 F.3d 709, 722 (7th Cir. 2013)**.

### 3.   Exhaustion Requirement under Illinois Law

IDOC's process for exhausting administrative remedies is laid out in the Illinois Department of Corrections Grievance Procedures for Offenders.   **20 Ill. Adm. Code § 504.810.**   Under the current grievance procedures, a prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute.   *Id.*   The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible."   *Id.*   The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer.   **20 Ill. Adm. Code § 504.810(c)**.   The prisoner will then have the opportunity to review the CAO's response.   **20 Ill. Adm. Code § 504.830(e).**   If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision.   **20 Ill. Adm. Code § 504.850**.   The ARB is required to make a final determination of the grievance within six months after receiving it.   *Id.*   Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO.   **20 Ill. Adm. Code § 504.840**.   The grievance may be handled on an emergency basis if the CAO determines that there exists a substantial risk of

imminent personal injury or other serious or irreparable harm to the offender.   *Id.*   The request to have a grievance handled on an emergency basis may also be appealed to the ARB.   **20 Ill. Adm. Code § 504.850(a)**.   If the CAO has determined an inmate's grievance to be of an emergency nature, the ARB is specifically required to expedite processing of the grievance.   **20 Ill. Adm. Code § 504.850(f).**

### ANALYSIS

Having reviewed the parties' pleadings and the evidence in the record, the dispositive issue in deciding Defendants' Motion for Summary Judgment is as follows: were Plaintiff's administrative remedies exhausted upon receiving the CAO's response to his emergency grievance on September 29, 2017, or was Plaintiff required to appeal the CAO's substantive decision to deny his emergency grievance to the ARB?

The parties do not dispute the existence or contents of Plaintiff's grievance or the CAO's response.   Nor does Plaintiff allege or argue that he did in fact appeal the grievance to the ARB after the CAO denied it.   In light of the facts in the record, and the relevant precedent considered by the Court, the undersigned concludes that Plaintiff did not fully exhaust his administrative remedies as required by the PLRA prior to filing suit.

The PLRA requires that a prisoner exhaust "administrative remedies as are available" prior to filing an action in federal court.   42 U.S.C. § 1997e(a).   So long as the administrative authority (here, the ARB), has the ability to take *some* action in response to the prisoner's complaint, an administrative remedy is still "available" under the

PLRA.  *Booth v. Churner*, **532 U.S. 731 (2001);** *Dole v. Chandler*, **438 F.3d 804, 808–09 (7th Cir. 2006) (Citing** *Booth* **and stating that "this circuit has taken a strict compliance approach to exhaustion");** *see also Larkin v. Galloway*, **266 F.3d 718, 723 (7th Cir. 2001) (inmate must exhaust prison remedies if the administrative body (1) was empowered to consider the complaint and (2) could take some action in response to it)**.

The Illinois Administrative Code (the "Code") lays out the grievance and appeals process available to prisoners.   A prisoner may file a grievance in the normal course, in which a grievance is submitted to a grievance officer, whose findings and recommendations are reviewed by the CAO, who renders a decision (and whose decision may then be appealed to the ARB).   **20 Ill. Adm. Code §§ 504.830, 504.850(a).**

Alternatively, a prisoner may request that his or her grievance be reviewed on an emergency basis, which causes the grievance to be forwarded directly to the CAO for review, and can then be immediately appealed to the ARB for expedited review.   **20 Ill. Adm. Code §§ 504.840, 504.850(a), 504.850(f).**   If the CAO agrees that the grievance should be handled on an emergency basis, he or she expedites the grievance proceeding and provides a response to the prisoner's grievance.   **20 Ill. Adm. Code § 504.840(b).**   If the prisoner still believes that the emergency grievance has not been satisfactorily resolved by the CAO, the prisoner can then appeal to the ARB.   **20 Ill. Adm. Code § 504.850(a).**   Importantly, the appeals process explicitly contemplates and applies to both emergency and non-emergency grievances, as evidenced by the Code's specific requirement that the ARB expedite the processing of emergency grievances.   **20 Ill.**

**Adm. Code § 504.850(f)**.

In this case, the undersigned concludes that Plaintiff still had access to a remedy with an administrative authority with the ability and authority to take action in response to Plaintiff's grievance—namely, Plaintiff should have filed a timely appeal of the CAO's September 29, 2017 response to the ARB under **20 Ill. Adm. Code § 504.850(a)**. There is no dispute that the ARB could have taken some action, including modification or reversal of the CAO's response, had Plaintiff actually filed an appeal. Because of this, Plaintiff still had "available" remedies under the Code and the PLRA that he needed to exhaust prior to filing suit. *See Booth***, 532 U.S. 731;** *Dole***, 438 F.3d at 808–09;** *Larkin***, 266 F.3d at 723.** Plaintiff failed to do so, and therefore failed to fully exhaust his administrative remedies.

In reaching its conclusion, the undersigned acknowledges the existence of Seventh Circuit precedent in which the appeals process was not required to be utilized prior to a prisoner's remedies being exhausted—*Thornton v. Snyder***, 428 F.3d 690 (7th Cir. 2005)** and *Bentz v. Ghosh***, 718 Fed. Appx. 413 (7th Cir. 2017)**. However, both of these cases are distinguishable.

First, the Seventh Circuit in *Thornton* held that a prisoner who had filed an emergency grievance ultimately deemed a non-emergency by the CAO was not required to re-file the grievance as a non-emergency (and follow the "normal" three step non-emergency grievance process) in order to exhaust his administrative remedies. **428 F.3d at 694**.

However, *Thornton* is factually distinguishable from the case at bar.  Here, the CAO agreed that Plaintiff's grievance should have been handled as an emergency, and provided Plaintiff with a substantive response to his grievance.  (Doc. 34, p. 3–5).  Defendant is not arguing that Plaintiff needed to re-file his grievance as a non-emergency in order to exhaust[1]—instead, Defendant points out that Plaintiff failed to appeal the CAO's decision to the ARB, as required by **20 Ill. Adm. Code. § 504.850**.  (Doc. 32, p. 6).   The *Thornton* court specifically declined to address the issue of whether the plaintiff was required to appeal the CAO's decision that his grievance was not an emergency because the plaintiff's requested relief was actually granted by the facility before the 30 day appeal period had passed.  ***Thornton*, 428 F.3d at 694 ("In any event, even if the non-emergency determination was a decision that should have been appealed, corrections officials [granted the plaintiff's requested relief] before the thirty-day time for an inmate to appeal a warden's determination had expired.")**.  The

[1] It is also noteworthy that the *Thornton* court rejected this argument (i.e., a prisoner whose emergency complaint is deemed a non-emergency must re-file their grievance in the ordinary course to exhaust) specifically because "[t]here [was] nothing in the current regulatory text . . . that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."   **428 F.3d at 694**. *Thornton* was decided in 2005, at which time the Code did not have any such requirement.   However, in April 2017, the Code was amended to add the following text to § 504.840:

> c)      If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process.

**20 Ill. Adm. Code § 504.840(c)**.

Thus, based on the change to the Code, there is at least an argument to be made that an inmate must in fact either re-file his grievance in the ordinary course if his emergency grievance is determined to not be an emergency, or appeal the CAO's decision to the ARB.   *See, e.g., Smith v. Asselmeier*, **3:17-cv-01237-JPG-DGW, 2018 WL 3533346, at **2–3 (S.D. Ill. July 23, 2018)**. However, the undersigned needs not address this issue given the facts in the record.

undersigned concludes that *Thornton*, which only mentioned this issue in passing *dicta*, does not stand for the proposition that Plaintiff need not avail himself to the appeals process just because he merely submitted an emergency grievance.

Second, the undersigned turns to *Bentz v. Ghosh*, a non-precedential, unpublished Seventh Circuit case decided in November 2017.   **718 Fed. Appx. 413 (7th Cir. 2017)**.   In *Bentz*, the plaintiff filed an emergency grievance relating to his tooth pain and other related issues.   *Id.* **at 417–18**.   The plaintiff's grievance was deemed a non-emergency by the warden, which led the plaintiff to immediately file his lawsuit instead of filing a new grievance in the ordinary course, or appealing the warden's decision to the ARB. *Id.* **at 418**.   In an efficient, three sentence analysis, the *Bentz* court found that "[a]s a preliminary matter, Bentz . . . exhausted his administrative remedies" by filing his complaint after receiving the warden's decision rejecting his emergency grievance, and, citing *Thornton* and the Code,[2] held that "Illinois rules do not require [the plaintiff] to appeal that decision to the [ARB]."   *Id*.

The undersigned believes the facts before the Court are distinguishable from *Bentz*, and even if not, the Court need not be bound by a non-precedential decision which would have the practical effect of ignoring most, if not all, of the Code's appeals processes.   Here, unlike *Bentz*, Pinckneyville's CAO agreed that Plaintiff's grievance should be handled on an emergency basis, and substantively responded to Plaintiff's grievance.   The Code lays out the process for a prisoner to appeal a CAO's response to a

---

[2]  As in *Thornton*, the *Bentz* court was also considering the pre-2017 version of the Code.   *See supra* note 1.

grievance to the ARB, **20 Ill. Adm. Code § 504.850(a)–(e)**, and specifically contemplates the ARB hearing and deciding emergency grievances on an expedited basis.   **20 Ill. Adm. Code § 504.850(f)**.   It strains reason to believe that an appeal to the ARB is not an available remedy as defined by the PLRA, the Supreme Court of the United States, and the Seventh Circuit's precedential, published opinions.   *See Booth*, **532 U.S. 731;** *Dole*, **438 F.3d at 808–09;** *Larkin*, **266 F.3d at 723.**

Put simply, the current version of the Code presents at least two "available" remedies, as defined by the PLRA, either of which must be exhausted by prisoners whose emergency grievances are denied by the CAO:   (1) the prisoner may re-file his or her grievance in the ordinary course, **20 Ill. Adm. Code § 504.840(c)**; or (2) the prisoner may appeal the CAO's response[3] denying to the ARB.   **20 Ill. Adm. Code § 504.850(a)**. If *Bentz* is treated as binding and correctly-decided precedent, it would read both the standard grievance process and the entire appeals process completely out of the Code. This would cause an untenable logistical situation in which a savvy prisoner litigant could simply file a frivolous emergency grievance, wait for the CAO to either deem the

---

[3]  There is an argument to be made that the CAO's decision to deem an emergency grievance as a non-emergency, while not substantively responding to the grievance, is not a "response" as defined by **20 Ill. Adm. Code § 504.850(a)**, and therefore does not implicate the Code's appeal provision.   *See, e.g., Viverette v. Wexford Health Sources Inc.*, **17-cv-586-JPG-DGW, 2018 WL 3526501, at \*\*3–4 (S.D. Ill. July 23, 2018)**.   However, if the intent of the *Bentz* decision was to create this distinction, the current version of the Code expressly provides another available remedy to be exhausted prior to filing suit—to re-file the grievance in the normal course.   **20 Ill. Adm. Code § 504.840(c)**; *see also supra* note 1.

Neither *Bentz* nor the case it cites, *Thornton*, were required to analyze this new language in the Code. Although undersigned still believes that *Thornton* is good law, and that the Code's amendments, absent any sort of statement of intent by the Illinois Department of Corrections to create this "response"/"non-response" paradigm, may not be enough to invalidate *Thornton*, the undersigned cannot see a path to conclude that the Code's entire appeal process is **not** an available remedy that must be exhausted by a prisoner prior to filing a lawsuit.

grievance a non-emergency or deny the grievance on the merits, and then immediately file his or her lawsuit without having exhausted the available remedies of filing a non-emergency grievance in the ordinary course, or appealing the CAO's response to the ARB. *See Smith*, **2018 WL 3533346, at \*3 ("If a prisoner could exhaust his administrative remedies by filing an emergency grievance instead of going through the standard protocols, then the entire regulatory structure would collapse.")**.

Thus, applying this analysis to the facts in the record, Plaintiff failed to exhaust his administrative remedies. The CAO's substantive response to his emergency grievance falls squarely within the available remedy of appealing said response to the ARB, an entity that unquestionably could have taken some action, including modification or reversal of the CAO's response, had Plaintiff actually appealed to it. The undersigned agrees that neither the Code's plain text nor the holding in *Thornton* required Plaintiff to resubmit his grievance in the ordinary course—however, Plaintiff did have to appeal to the ARB and receive its response prior to filing suit.

Having concluded that Plaintiff did not appeal the CAO's response to his emergency grievance to the ARB pursuant to **20 Ill. Adm. Code § 504.850(a)**, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff did not properly exhaust his administrative remedies as to Defendants Blum and Wexford before filing his Complaint.

## CONCLUSION AND RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to

properly exhaust his administrative remedies prior to filing his Complaint, and **GRANT** Defendants Blum and Wexford's Motion for Summary Judgment.   (Docs. 31, 32).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).**   Thus, Objections to this Report and Recommendation must be filed on or before **November 14, 2018**.

**IT IS SO ORDERED**.
DATED:      October 26, 2018

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge